## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARTI MORRIS,

        *Plaintiff*,

v.

LLOYD J. AUSTIN, III,

        *Defendant*.

Civil Action No. 20-cv-03578 (JMC)

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the Motion to Dismiss, ECF 14, and Memorandum, ECF 14-1, filed by the Secretary of the United States Department of Defense (DOD), Lloyd J. Austin, III. For the reasons stated herein, the Motion is granted, and this case is dismissed.[1]

## I.  BACKGROUND

The following facts are taken from Plaintiff's Complaint, incorporated documents, and public records of administrative proceedings. Plaintiff Marti Morris, proceeding in this matter *pro se* and *in forma pauperis*, was employed as a Senior Auditor with the DOD's Defense Contract Audit Agency (DCAA). ECF 1-2 at 23. She sustained an on-the-job injury in May 2012. *Id*. at 24. At first, she used a combination of her personal leave and advanced sick leave to cover her absences. *Id*. at 24 n.2. However, when her leave ran out and the absences continued, the DCAA charged her with Absence without Leave (AWOL). *Id.*; ECF 16-1 at 4–5. Morris filed a workers' compensation claim, which was approved by the Department of Labor's Office of Workers'

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

Compensation Program (OWCP). ECF 1-2 at 24. Nevertheless, her absences remained coded as "AWOL." *Id*.

On October 19, 2015, the DCAA terminated Morris "due in part to excessive absences and failure to follow leave procedures." ECF 14-2 at 3. At the time of her termination, Morris was indebted to the DCAA because of her uncorrected leave balance, which totaled negative 197.82 hours, and for $126.80 of unpaid health benefits premiums.[2] ECF 1-2 at 24.

Shortly after her separation, Morris filed an EEO Complaint challenging her termination. *Id*. at 24 n.3. In November 2015, the DCAA and Morris entered into a settlement agreement, and Morris' separation was changed from a termination for excessive absences to a medical retirement. *Id.* at 24 n.3, 30. In the months that followed the settlement, Morris received e-mailed assurances from her former manager that he would correct the payroll information on her leave record by resubmitting the relevant paperwork. ECF 14-2 at 3–4. Despite those assurances, the DCAA never made the promised corrections. *Id.* In February 2016, Morris received a notice from the Defense Finance and Accounting Service (DFAS) that she owed a debt of more than six thousand dollars attributable to "overpayment due to allowance and personnel change(s)" between February 2013 and June 2014 and "non-payment of [] health benefits premiums" in 2015. ECF 16-1 at 22–24.

More than eight months later, on December 11, 2017, Morris submitted an online customer service request to the DFAS disputing the Agency's notice of indebtedness. ECF 14-2 at 5. In that request, Morris complained that her absences, which should have been classified as OWCP, had instead been miscategorized as AWOL, and pointed out that the Agency had promised to correct the error after her separation. *Id.* The customer service request was apparently unavailing, as Morris received another notice in January 2018 that her debt (now over nine thousand dollars) had

---

[2] The $126.80 in debt attributable to the unpaid health premiums has since been cancelled. ECF 16-1 at 3.

been referred to the Department of the Treasury, and that if she did not immediately pay her debt, it could lead to the garnishment of her federal benefits. ECF 16-1 at 26. According to Morris, the government began to garnish her Social Security payments in June 2018, continuing through the present day. ECF 14-2 at 3.

On December 12, 2018, following an inquiry made on her behalf by Congressman Kenny Marchant, Morris received a letter from the DFAS that included an audit itemizing her leave balance by pay period. ECF 16-1 at 3–5. Thirty-four days after that, on January 15, 2019, Morris made her first contact with an EEO counselor. ECF 1-2 at 6. During the counseling process, Morris alleged that she was subjected to discrimination due to her mental and physical disabilities, and reprisal, all arising from (1) her former manager's failure to correct her leave record, and (2) the subsequent lien against her Social Security benefits. *Id.* The counseling process failed to resolve her claims, so Morris was given instructions regarding her right to file a formal EEO complaint with the DCAA, *id.*, which she did in April 2019. *Id.* at 8. The DCAA dismissed her complaint, finding—as is relevant here—that Morris failed to initiate contact with the EEO counselor within 45 days of the adverse occurrence, as required by 29 C.F.R. § 1614.105(a)(l). ECF 14-2 at 4–5. The EEOC affirmed, ECF 1-2 at 26, and Morris' request for reconsideration was denied. *Id.* at 30–31.

On December 1, 2020, Morris filed the instant matter in the United States District Court for the Northern District of Texas, alleging unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. ECF 1. On December 4, 2020, the Northern District of Texas entered an Order transferring the case to this Court. ECF 6. The Secretary filed a Motion to Dismiss on October 25, 2021, on the grounds that Morris failed to exhaust her administrative remedies.

ECF 14. Morris filed an Opposition on November 30, 2021, ECF 16, and the Secretary filed a

Reply on January 14, 2022, ECF 19.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss under Rule 12(b)(6)

Because a motion to dismiss for failure to exhaust Title VII remedies is not jurisdictional,

it is properly evaluated under Federal Rule 12(b)(6). *Gordon v. Nat'l Youth Work All.*, 675 F.2d

356, 359–60 (D.C. Cir. 1982). In contrast, the exhaustion requirement under the Rehabilitation Act

is, at first blush, jurisdictional; when a plaintiff raising such a claim "fail[s] to file an administrative

complaint or to obtain any administrative decision at all," a motion to dismiss for failure to exhaust

administrative remedies is reviewed under Federal Rule 12(b)(1). *Doak v. Johnson*, 798 F.3d 1096,

1103–04 (D.C. Cir. 2015). "However, when a plaintiff allegedly fails to exhaust their

administrative remedies due to a failure to comply with a regulatory requirement"—such as the

45-day deadline under 29 C.F.R. § 1614.105(a)(l)—"the defect is not jurisdictional, and [it is]

therefore reviewed under . . . Rule 12(b)(6)." *Pearson v. Chao*, No. 17-cv-1965, 2019 WL

1004040, at *3 (D.D.C. Feb. 28, 2019) (citing *Doak*, 798 F.3d at 1103)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In

evaluating a motion to dismiss under 12(b)(6), a court must "treat the complaint's factual

allegations as true, and must grant [the] plaintiff the benefit of all inferences that can be derived

from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

That said, a court need not accept "inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002). Nor must a court accept "legal conclusions cast in the form of factual allegations." *Id.*

In ruling on a 12(b)(6) motion, a court "may consider [] the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). This includes "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). In the case of a *pro se* plaintiff, it also includes documents produced in "filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

### B. Exhaustion of Administrative Remedies

Under both Title VII and the Rehabilitation Act, a plaintiff must timely exhaust their administrative remedies before filing suit in court. 42 U.S.C. § 2000e-16(c) (requiring exhaustion under Title VII procedures); 29 U.S.C. § 794a(a)(1) (applying the "remedies, procedures, and rights" associated with Title VII claims to Rehabilitation Act claims); *see also Payne v. Salazar*, 619 F.3d 56, 58 (D.C. Cir. 2010). To begin that process, and prior to filing a formal written complaint, an employee must "initiate contact" with an EEO counselor about the alleged violation within 45 days of its occurrence. 29 C.F.R. § 1614.105(a)(1); *see also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007). That 45-day timeline "starts to run when the plaintiff has a reasonable suspicion that he has been the victim of discrimination." *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007); *see also Ali v. McCarthy*, 179 F. Supp. 3d 54, 66 (D.D.C. 2016) ("The determination of when a claim accrues is an objective inquiry turning on not what the

plaintiff actually knew but what a reasonable person should have known.").[3] If counseling fails to resolve an employee's claim, the employee may file a formal administrative complaint with the agency's EEO office for adjudication. *See* 29 C.F.R. §§ 1614.105(a), 1614.106(a)–(c).

### C. Equitable Tolling

"Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government, a court may not," as a general rule, "consider a discrimination claim that has not been exhausted," such as where a plaintiff failed to initiate contact with an EEO counselor within 45 days of the alleged discrimination. *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008). However, exhaustion of administrative remedies is not a jurisdictional requirement; "like a statute of limitations, [it] is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982). Tolling, unlike estoppel, focuses not on the "conduct of the defendant" but on the "circumstances of the plaintiff." *Chung v. U.S. Dep't of Just.*, 333 F.3d 273, 278–79 (D.C. Cir. 2003). It "applies most commonly when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Id.* at 278. Because tolling, unlike estoppel, does not focus on preventing a defendant from benefitting from his or her own misconduct, it is not indefinite; a deadline is tolled only long enough to "ensure[] that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." *Id*.

There are two legal bases for tolling with respect to EEO limitation periods: EEOC regulation 29 C.F.R. § 1614.105(a)(2) and equitable tolling. *Hall v. Dep't of Com*., No. 16-cv-

---

[3] Although courts in this District have repeatedly invoked the reasonable suspicion standard, and the EEOC has endorsed that interpretation, the D.C. Circuit has never expressly decided whether reasonable suspicion is the proper standard under current law. *See Drielak v. Pruitt*, 890 F.3d 297, 299 n.2 (D.C. Cir. 2018). As neither party challenges that standard here, the Court will follow the D.C. Circuit's example and "assume, without deciding, that it is the proper standard." *Id*.

1619, 2017 WL 9615889, at *9 (D.D.C. Aug. 22, 2017); *see also Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (clarifying that these are separate standards). Under 29 C.F.R. § 1614.105(a)(2), an agency "shall extend the 45-day time limit" when the employee shows one of the following:

> [1] that he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, [3] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or [4] for other reasons considered sufficient by the agency or the Commission.

Under the "more demanding common law standard for equitable tolling," *Harris*, 488 F.3d at 444, a deadline is tolled when a plaintiff establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Young v. Sec. & Exch. Comm'n*, 956 F.3d 650, 655 (D.C. Cir. 2020). The "extraordinary-circumstances prong" encompasses only "matters outside [the litigant's] control," *Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016), not circumstances that are "a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation," *Head v. Wilson*, 792 F.3d 102, 107 (D.C. Cir. 2015). A "garden variety claim of excusable neglect" does not warrant equitable tolling. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020). Rather, the court will invoke equitable tolling "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

## III.    ANALYSIS

The Secretary argues the Complaint should be dismissed because Morris failed to contact an EEO counselor within 45 days of the alleged discriminatory occurrence. ECF 14-1 at 1. He

maintains that, because Morris first contacted the counselor on January 15, 2019, any alleged discriminatory or retaliatory event must have accrued after December 1, 2018—or 45 days before that contact—but that Morris' constructive knowledge of the alleged discrimination occurred well before that date. *Id.* at 7. In the Secretary's view, Morris had reasonable suspicion of discrimination by, at the latest, December 11, 2017, when she filed her customer service request with the DFAS complaining about the DCAA's misclassification of her leave.

Morris counters that it was not until December 12, 2018, when she received the letter and audit from the DFAS, that she knew the DCAA had broken its promise to correct her leave balance. ECF 16 at 2. According to Morris, she could not have reasonably suspected discriminatory intent prior to learning the true provenance of her debt. In the alternative, Morris argues that even if her initial contact with the EEO counselor occurred more than 45 days after the discriminatory event, that 45-day deadline should be tolled under either 29 C.F.R. § 1614.105(a)(2) or the doctrine of equitable tolling. *Id.* at 3. The Court disagrees with her on both points.

The Complaint establishes that Morris had, by December 2017 at the latest, received an abundance of information that would cause a reasonable person to suspect discrimination. By late 2015, Morris was aware that the DCAA had misclassified as "AWOL" her leave from the pay periods after the expiration of her authorized leave. ECF 14-2 at 3. By early 2016, Morris knew that her DCAA supervisor, who had been responsible for the initial misclassification of her leave, was also the individual responsible for correcting that error. *Id.* at 4. By February 2016, Morris had received at least two notices of debt linked to her employment with the DCAA, each of which stated the exact amount she owed and indicated the time periods in which the debt accrued—with the timing of the purported overpayments corresponding to the periods in which Morris had been absent from work following her injury. ECF. No. 16-1 at 16, 22. Even if the above information,

taken on its own, was not sufficient for Morris to reasonably suspect that the DCAA had not kept

its promise to correct her leave balance, any doubt as to that point is dispelled by Morris' December

2017 customer service request, which shows not only that Morris had reason to suspect that her

debt originated with her misclassified and uncorrected leave balances, but that she actually did

suspect as much. *See* ECF 14-2 at 5.

Morris attempts to draw a distinction between, on the one hand, knowledge that an adverse

action took place, and, on the other, suspicion that the motivation for that action was

discriminatory. Although Morris acknowledges that the 45-day clock under 29 C.F.R.

§ 1614.105(a)(1) starts when an employee has reasonable suspicion of discriminatory motivation,

she argues that such suspicion would be "illogical" before an employee can confirm, with absolute

certainty, that an adverse employment event happened in the first place. In support, Morris cites

to *Fortune v. Holder*, in which the court held that an employee had reasonable suspicion of

discrimination from the date they learned of their termination, even where they only later

discovered evidence of discriminatory intent. 767 F. Supp. 2d 116, 121−22 (D.D.C. 2011); *see

also Hayes v. Chao*, 592 F. Supp. 2d 51, 56 (D.D.C. 2008) (plaintiff was required to contact an

EEO counselor within 45 days of the agency's failure to promote him, not after receiving a copy

of a performance report as "proof" of discriminatory intent); *McCants v. Glickman*, 180 F. Supp.

2d 35, 39−40, 41 (D.D.C. 2001) (plaintiff was required to contact EEO counselor within 45 days

of learning his job interview was unsuccessful, not after receiving "tangible evidence" of

discrimination). It is true that in those cases the 45-day clock began to run when the employee

became aware of the adverse event. However, it does not follow that Morris lacked reasonable

suspicion of discrimination prior to receiving the audit in December 2018. For one thing, the DFAS

audit contained no new information that would trigger reasonable suspicion where it was absent

before. *See* ECF 16-1 at 3–5. Although the audit broke down Morris' leave balance in more detail than the notices of debt Morris had already received, those prior notices included more than enough information to tie her debt to the periods in which she had been absent from work following her injury. *See id.* Also, Morris' customer service request in December 2017 shows that she actually suspected that an adverse action had taken place. *See* ECF 14-2 at 5. In other words, Morris had ample reason to suspect—as of December 2017 at the latest—that the DCAA had failed to correct her misclassified leave. At that point, it was her obligation to contact an EEO officer within 45 days. She did not do so.[4]

Nor is Morris entitled to an extension of the 45-day deadline under either 29 C.F.R. § 1614.105(a)(2) or the doctrine of equitable tolling. As an initial matter, Morris has not alleged facts that would require tolling under 29 C.F.R. § 1614.105(a)(2). She neither alleges nor argues that she lacked knowledge of the 45-day deadline, *cf. Harris*, 488 F.3d at 444 (plaintiff submitted affidavit that she was unaware of the time limit), or that "she was prevented by circumstances beyond . . . her control from contacting the counselor within the time limits," *cf. Vasser v. McDonald*, 228 F. Supp. 3d 1, 16 (D.D.C. 2016) (noting that even an agency's deliberate withholding of certain documents would not support tolling the deadline). Rather, Morris' sole argument under 29 C.F.R. § 1614.105(a)(2) is that "she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." But, as discussed above, Morris' Complaint establishes the opposite. The customer service complaint she filed in December 2017 shows that by that date, at the latest, Morris should reasonably have known that the DCAA had failed to keep its promise to correct her erroneous leave balances.

---

[4] Morris' initial DCAA complaint alleges that the placement of a lien on her Social Security benefits constituted a distinct discriminatory act and therefore a separate claim. ECF No. 14-2 at 3. The Court does not opine on the validity of that claim, except to point out that the garnishment of Morris' benefits began in June 2018, *id.*, so that her January 15, 2019 contact with the EEO counselor was well outside the 45-day window regarding that claim as well.

As for the "more demanding" standard set by the doctrine of equitable tolling, *Harris*, 488 F.3d at 444, Morris' Complaint does not show either that she had been diligently pursuing her rights, or that extraordinary circumstances outside her control prevented her from doing so. Even after receiving her second notice of debt in February of 2016, Morris waited for nearly a year to file an online complaint regarding her debt. When that complaint was unavailing, she waited another year (more than three years after her separation, and six months after the government began to garnish her Social Security) to contact an EEO counselor. There is nothing in Morris' Complaint to suggest that she took any additional steps, at any other time, to pursue her rights under either Title VII or the Rehabilitation Act. That timeline does not show diligence on Morris' part. That lack of diligence alone is sufficient to preclude equitable tolling of the 45-day deadline.

Finally, Morris contends that she faced extraordinary circumstances because the DCAA engaged in "affirmative misconduct" that "discouraged pursuit of [administrative relief] by redirecting perceptions of fault to other agencies" and providing her "with good faith belief that [the DCAA] would do its due diligence to fix any and all issues." ECF 16 at 4. Although it is likely that a plaintiff's reasonable reliance on an employer's assurances that an adverse matter was being dealt with outside of the formal EEO process would be grounds for *some* tolling of the regulatory deadline, here there are no allegations that the DCAA engaged in any such conduct later than December 2017. Whatever assurances Morris received from the DCAA, it appears they occurred no later than early 2016; there were any number of subsequent events that should have disabused her of her reliance on those assurances. *See Chung*, 333 F.3d at 278 (D.C. Cir. 2003) (tolling extends only long enough to "ensure[] that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit."). Accordingly, the doctrine of equitable tolling does not apply, and Morris' case cannot proceed.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds that Morris failed to timely exhaust her administrative remedies, and, therefore, the Court GRANTS the Secretary's Motion to Dismiss, ECF 14. This matter is dismissed pursuant to Federal Rule 12(b)(6). A separate Order is contemporaneously issued and accompanies this Memorandum Opinion.


Date:   October 7, 2022


_____
JIA M. COBB
United States District Court Judge